IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                            Case Nos.:    3:07cr77/MCR
                                                             3:09cv196/MCR/EMT

TODD LANGLEY JOHNSON

---

### ORDER, and REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255  (doc. 44).  The Government filed a response (doc. 57), and Defendant filed a reply (doc. 65).  Defendant has also filed a "Motion for Leave to Supplement Claims under Equitable Tolling; 28 U.S.C. § 2255" (doc. 78).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the § 2255 motion should be denied.

## I. BACKGROUND

On May 15, 2007, Defendant was charged in a two-count indictment with (Count One) felony driving under the influence ("DUI"), in violation of Florida Statute § 316.193 and 18 U.S.C. §§ 7 and 13; and (Count Two) felony driving with a suspended, revoked and cancelled license in violation of Florida Statute § 322.34(2) and 18 U.S.C. §§ 7 and 13 (doc. 1).  Defendant entered a plea of guilty to both counts on June 7, 2007 (docs. 14, 36).  On the same date, the Government filed a "Statement of Facts/Elements of the Offense/Penalties," that was signed by Defendant and his counsel (doc. 15). This statement advised that the maximum penalty for a third offense of felony DUI (Count One) was up to five years imprisonment, a fine of not less than $1,000 and not more than $5,000, three years

supervised release, and a $100 special monetary assessment (doc. 15 at 1).  The maximum penalty for a third offense of felony driving with knowledge that license was suspended or revoked (Count Two) was up to five years imprisonment, a fine of $5,000, three years supervised release, and a $100 special monetary assessment (*id.*).  The statement further provided the factual basis for the offense conduct and specifically noted that Defendant had convictions for DUI on January 18, 1986, December 27, 1993, March 19, 1998, August 24, 2000, and March 23, 2002 (*id.* at 2); that he had convictions for driving while his license was suspended or revoked on March 4, 1999, and August 24, 2000; and that his driver's license had been permanently revoked as a habitual offender (*id.* at 3).

The plea proceeding was unremarkable.  The court identified Defendant and his attorney, and it advised Defendant that if he at any time needed to speak with counsel to let it know and it would stop the questioning to afford him this opportunity (doc. 36 at 3).  The court also advised Defendant of the charges against him and explained his constitutional rights (*id.* at 3–4, 7–10).  When asked whether he understood why he was before the court that day, and whether he understood the rights he would be waiving by entering a guilty plea, Defendant indicated that he did (*id.* at 7, 10).  The court inquired whether Defendant had signed the "Statement of Facts, Elements of Offense, and Penalties," and Defendant indicated that he had signed it of his own free will after fully discussing it with his attorney (*id.* at 10–11).  The court reviewed the potential penalties with Defendant to ensure his understanding of them, and he indicated he understood (*id.* at 11).  Defendant told the court that he did not need any further explanation of the legal elements of the two charges he faced and that he accepted the facts as stated in the Statement of Facts in full (*id.* at 12).  The court explained the process by which the Presentence Investigation Report ("PSR") would be prepared (*id.* at 13–14).  It informed Defendant that the penalties provided in the Florida Statutes would apply rather than the Sentencing Guidelines, as there was no analogous guideline for driving under the influence or driving with a suspended or revoked license for offense conduct that took place prior to November of 2006 (*id.*).  The court advised Defendant that the penalty would be between thirty days and five years of incarceration, but that he could receive a sentence of up to ten years if the sentences were imposed consecutively (*id.* at 14–15).  The court specifically made clear to  Defendant that no one could predict at that point what his sentence would be, not even his lawyer, notwithstanding counsel's experience with the court and with DUI laws (*id.* at 15).  The court noted that this was in part because

the PSR had not been prepared, but also because "there are no guarantees in federal court" (*id.*).  It also carefully advised Defendant that if he received a sentence that was harsher than he thought it would or should be, that he would not be able to withdraw his plea on that basis, and he would not "be heard to complain about that at sentencing" (*id*. at 15–16).  Defendant indicated that he understood (*id.* at 16).  The court explained to Defendant, and he affirmed his understanding, that there was no parole in the federal system and that he could expect to serve all his time, and that he could also expect to serve a term of supervised release (*id.*).  He was specifically asked about his satisfaction with counsel and told that if he had any complaints, that would be the time to make them known to the court (*id.* at 17).  Defendant said that he had no complaints (*id.*).  At the conclusion of the colloquy, the court found that Defendant was alert and intelligent, that he appreciated the consequences of entering a guilty plea, that his decision to change his plea was voluntarily made of his own free will, without any threats or pressure, and after consulting with competent counsel with whom he had indicated he was well satisfied (*id.*).  The court accepted Defendant's guilty plea and remanded him to the custody of the marshal pending sentencing (*id.* at 18).

At sentencing, counsel outlined his client's extensive background of alcohol problems and asked that the court run Defendant's federal sentence concurrent to a state sentence he was currently serving because both charges involved alcohol (doc. 30 at 2–5).  Defendant addressed the court and expressed his remorse, said that he finally realized he had an alcohol problem as well as bipolar disorder, and asked to be transferred to federal custody where he might receive help for those issues (*id.* at 7–11).  He also claimed that he would never drive again, but when the court asked how it could believe him with his record, he admitted that there was no basis for trusting his word (*id.* at 9).  In response to Defendant's assertion that his was a "victimless" crime, the court recited a litany of DUI deaths that had occurred within this community (*id.* at 12–15).  It also set forth in detail his criminal history and the many prior opportunities he had to make a change but failed to do so (*id.* at 15–19). Defendant withdrew his assertion about DUI being a victimless crime, and while seeming to contest some of the facts relating to the traffic stop, admitted he was in the wrong (*id*. at 21–23). The court noted its primary objective was to protect the community, because it did not have confidence that any sentence would serve as a deterrent to Defendant and sentenced him to sixty months imprisonment on Count One, and sixty months imprisonment on Count Two to be served consecutively, and to be served

consecutively with the state sentence he was then serving, a $1000 fine as to Count One, and $200 special monetary assessment (*id.* at 23–25).  The court stated it had considered the factors outlined in 18 U.S.C. § 3553(a) but reiterated that the sentence was based on Defendant being a high risk to public safety (*id.* at 26).

Defendant appealed (doc. 20).  He argued that the statute cited in Count Two, § 322.34(2) Florida Statutes, expressly excludes persons who have had their licenses revoked as habitual offenders and therefore he was "illegally sentenced" as a habitual offender (doc. 43 at 2).  The Eleventh Circuit found that although § 322.34(2) was not applicable to Defendant, his conduct was in violation of § 322.34(5), and that pursuant to Federal Rule of Criminal Procedure 7(c)(3), an erroneous citation that neither misled nor prejudiced Defendant provided no basis to reverse the conviction, given that the conviction could be sustained on the basis of a statute other than the one cited (*id.* at 4–5, *citing* United States v. Bennett, 368 F.3d 1343, 1352–55 (11th Cir. 2004), *vacated on other grounds* 543 U.S. 1110 (2005)).[1]  It affirmed the judgment of conviction on May 27, 2008 (doc. 43).  Defendant states that he filed a pro se motion for rehearing on June 25, 2008, which was rejected as untimely (doc. 44, exh. V), and he also filed a motion to recall mandate, which was denied on April  23, 2009 (doc. 44, memo at 2[2]).

In the present § 2255 motion, Defendant raises four grounds for relief, each relating to the sentence imposed.  He claims that they were not raised previously due to ineffective assistance of counsel (doc. 44 at 7).  He adds additional grounds for relief in the attached memorandum.  The Government asserts that Defendant's claims are procedurally barred and that he has failed to show cause and prejudice for his failure to raise them previously, without offering a substantive analysis of Defendant's claims.

## II.  LEGAL ANALYSIS

General Standard of Review

---

[1] Defendant was properly sentenced under § 322.34(5) (doc. 43 at 5).

[2] "Memo" refers to the pleading titled "Criminal Collateral Review Title 28 U.S.C. § 2255" that is attached to Defendant's § 2255 motion.

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981); Hidalgo v. United States, 138 Fed. Appx. 290 (11th Cir. 2005).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, as previously noted a motion to vacate under section 2255 is not a substitute for direct appeal, and thus issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); Mills, 36 F.3d at 1055 (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); United States v. Frady, 456 U.S. 152, 165 (1982).  Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255

motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  Defendant appears to concede that his claims are procedurally barred, but he asserts he can avoid the procedural bar because counsel was ineffective for his failure to raise them previously.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).  The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).  To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Id., 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Gaskin v. Secretary, Dept. of Corrections, 494 F.3d 997, 1002 (11th Cir. 2007).  "Strickland's two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea."  Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990) (citing Hill v. Lockhart, 474 U.S. 52 (1985)); United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001).  In applying Strickland, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688; see also Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan, 909 F.2d at 477 (citing Harich v. Dugger, 844

F.2d 1464, 1469 (11th Cir. 1988); Dingle, 480 F.3d at 1099; Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")).  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315 (en banc)).  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  Glover v. United States, 531 F.3d 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  Id.

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); United States v. Ross, 147 Fed. Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313.  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather, whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."  United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although § 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

Defendant's Claims for Relief

1.    Ground One[3]

Defendant contends that although the statutes under which he was charged, Fla. Stat. §§ 316.193 and 322.34(2) were both assimilated through 18 U.S.C. § 13, they both fail to provide elements for punishment.  Therefore, he concludes, the maximum possible sentence is one year as provided under the Assimilative Crimes Act 18 U.S.C. § 13 (doc. 44 at 4).  The Government does not address the merits of this claim, stating only that it is procedurally barred.

The basic purpose of the Assimilated Crimes Act ("ACA") is one of borrowing state law to fill gaps in federal criminal law that applies on federal enclaves.  *See* Lewis v. United States, 523 U.S. 155, 160 (1998).  It provides in part that with respect to actions taken on federal land:

> [w]hoever . . . is guilty of any act . . . which, although not made punishable by any enactment of Congress, would be punishable if committed . . . within the jurisdiction of the State . . . in which such place is situated, by the laws thereof in force at the time of such act . . ., shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).  It further provides, "that which may or shall be imposed through judicial or administrative action under the law of a State . . . for a conviction for operating a motor vehicle under the influence of a drug or alcohol, shall be considered to be a punishment provided by that law."  18 U.S.C. § 13(b)(1).  Additional penalties from one to ten years beyond those provided in state law are provided if a minor was present in the vehicle during, and/or was injured or killed as a result of, the offense conduct.  18 U.S.C. § 13(b)(2)(A).  Thus, the statute clearly contemplates the application of state law penalties to offense conduct taking place on federal land.  Defendant's reference to a one-year maximum penalty for DUI offenses under the ACA is misguided, as there is no such maximum. It is well established that counsel is not ineffective for failing to preserve or argue a meritless claim. Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not

---

[3] Grounds One through Four are the grounds raised in Defendant's § 2255 motion itself.  The remaining grounds for relief are culled from arguments Defendant makes in his accompanying memorandum.

ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit).  Therefore, Defendant has not shown that counsel was ineffective for his failure to make this argument.

2.    Ground Two

Defendant next contends that the language of section 322.34(2) Florida Statutes, assimilated under 18 U.S.C. § 13, expressly excludes Defendant, as an habitual offender, from being charged under this statute.  This is the exact issue that was litigated on appeal, and it need not be reconsidered here, *see, e.g.,* Nyhuis, 211 F.3d at 1343, even under the guise of an ineffective assistance of counsel claim.

3.    Ground Three

Defendant asserts that section 2X5.1 of the Sentencing Guidelines requires section 921.002, Florida Statutes to be assimilated, or alternatively for the court to consider Guidelines calculations, if available.  The basis for Defendant's suggestion that section 921.002, Florida Statutes, must be assimilated, is unclear.  Furthermore, as noted above, the Guidelines were inapplicable to Defendant's offense conduct (doc. 36 at 13–15).  And, the sentencing court clearly considered the § 3553 factors as contemplated by § 2X5.1 in imposing sentence.  As there was no viable argument, counsel was not constitutionally ineffective for his failure to present an unmeritorious claim.  *See* Freeman; Brownlee, *supra*.

4.    Ground Four

This ground contains multiple parts.  Defendant contends that his sentence is procedurally unreasonable because the court failed to make Guidelines calculations and to prepare a guidelines score sheet in accordance with section 921.002, Florida Statutes.  He asserts that his sentence is substantively unreasonable because it exceeds the maximum sentence allowed by Florida law, and that his term of supervised release also exceeds the maximum allowed under Florida law.  Finally, he claims that there was error due to sentencing disparity.  He identifies case 3:07cr63/LAC, where Defendant Gary D. West, who, when facing virtually the same charges with a similar criminal history, was sentenced to a term of only 60-months imprisonment.  *See* United States v. West, 270 Fed. Appx. 935 (11th Cir. 2008).

If a defendant challenges his sentence as "unreasonable" on appeal, the appellate court must review the sentence for reasonableness under an abuse-of-discretion standard.  *See* Gall v. United

States, 552 U.S. 38, 51 (2007).  A sentence may be either procedurally or substantively unreasonable, or both.  *Id.*  "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in light of both [the] record and the factors in section 3553(a)."  United States v. Talley, 431 F.3d 784, 788 (11th Cir.2005).

To determine the procedural reasonableness of the sentence, the reviewing court must ensure that there was no significant procedural error.  Such error would include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen facts."  Gall 552 U.S. at 51.  Defendant clearly has not established procedural error.  There was no applicable federal Sentencing Guidelines range for his offense conduct, so there was no range for the court to consider (doc. 36 at 13–15).  The court was not required to adopt the procedures of another jurisdiction, in this instance the State of Florida, and prepare a score sheet as would be used in state court.  The record clearly reflects that the court explained at length its consideration of the § 3553 factors, and the facts underscoring its sentencing decision.  Finally, there has been no suggestion that any of the facts on which it relied in reaching its decision were "clearly erroneous," as Defendant never denied any part of his extensive criminal history.  Thus, counsel was not constitutionally ineffective for his failure to challenge Defendant's sentence as procedurally unreasonable.

With respect to an examination of the substantive unreasonableness of a sentence, the Gall Court instructed that  the reviewing court must take into account the "totality of the circumstances," including the extent of any variance from the Guidelines range, and review the sentence imposed under an abuse of discretion standard. 552 U.S. at 51.  Defendant's statutory maximum sentence in this case was imposed after consideration of Defendant's multi-jurisdictional history of DUI and driving while his license was revoked, as well as other alcohol-related offenses, and the court's belief that a term of incarceration was unlikely to deter him (*see* doc. 30 at 20).  The court was thorough in placing on the record its consideration of the "totality of the circumstances" in Defendant's case.  His  sentence was substantively reasonable, and counsel was not constitutionally ineffective for his failure to challenge it.  *See* Freeman; Brownlee, *supra*.

Finally, in order to address Defendant's claim that there was sentencing disparity, this court has reviewed the indictment of the individual with whom he compares himself, Grady D. West (case

no. 3:07cr63/LAC, doc. 1).  While the two men were charged with the same offenses,[4] each reflecting similar disdain for the law, Mr. West's indictment suggests that he had only three, rather than six prior convictions for DUI, and that unlike Defendant, Mr. West did not appear to have had any prior convictions for driving while license suspended or revoked (*id.*).[5]  Thus, Defendant has not established that the two men were so similarly situated that they should have received identical sentences, or that any alleged sentencing disparity was unwarranted.  Furthermore, even if any disparity were apparent, to the extent Defendant claims counsel was ineffective for failing to make this argument before the district court, his argument fails.  As Defendant admits, Mr. West was sentenced only days before he was.  Counsel cannot be deemed constitutionally ineffective for his failure to bring Mr. West's unrelated case, defended by a different attorney before a different jurist to the attention of the district court.

     5.     <u>Ground Five</u>

Defendant asserts that counsel failed to advise him of his right "to rehearing and/or certiorari review to the U.S. Supreme Court" (doc. 44, memo at 6).  There is no "right" to such review.  The Supreme Court hears only a fraction of the cases that are presented to it each year.  If Defendant's argument is that counsel failed to advise him of the right to file a petition for writ of certiorari, he still has not established that counsel was constitutionally ineffective.  Nothing in the arguments that Defendant raised on appeal or raises now herein suggests that this case would have been selected by the Court for review had he filed such a petition, or that the ultimate outcome of the proceedings would have been different.

     6.  <u>Ground Six</u>

Defendant claims that counsel "misled" him during the trial phase and change of plea, then stood silent during sentencing "against Appellant's wishes" (doc. 44, memo at 6).  Initially, there was no "trial phase" in this case.  Moreover, although there were change of plea and sentencing hearings, it is not clear what Defendant wished counsel to have done at these hearings.  Absent any supporting

---

[4] Mr. West also was charged with an open container offense, which was dismissed upon motion of the Government after his guilty plea and sentencing (case 3:07cr63/LAC, doc. 21).

[5] The court has not reviewed the rearraignment or sentencing transcripts in West's case, as they are not electronically available.

factual allegations, he has not shown that counsel was constitutionally ineffective.  *See* Wilson;
Tejada; Stano; *supra*.

Defendant also suggests that his plea was coerced (doc. 44, memo at 9).  An allegation of a
coerced plea, supported by a factual allegation, can support a § 2255 motion.  *See* Fontaine v. United
States, 411 U.S. 213, 214–15; United States v. Lampazianie, 251 F.3d 519, 524 (5th Cir. 2001).
However, a defendant's statements during a Rule 11 colloquy as well as any findings made by the
judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings.
Blackledge v. Allison, 431 U.S. 63, 73–74 (1977); *cf.* Holmes v. United States, 876 F.2d 1545, 1550
(11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding
nature of plea).  Solemn declarations made under oath in open court carry a strong presumption of
verity.  Blackledge, 431 U.S. at 73–74; United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994)
(citing United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987)); United States
v. Munguia-Ramirez, 267 Fed. Appx. 894 (11th Cir. 2008).[6]  They are presumptively trustworthy and
are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation
of conclusory and contradictory allegations does not suffice.  Blackledge, 431 U.S. at 73–74; United
States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [a defendant's]
Rule 11 statements will not be overcome unless the allegations in the § 2255 motion . . . include
credible, valid reasons why a departure from those earlier contradictory statements is now justified.");
*see also* United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987) (while not
insurmountable, there is a strong presumption that statements made during a plea colloquy are true,
citing Blackledge and other cases); Downs-Morgan v. United States, 765 F.2d 1534, 1541 n.14 (11th
Cir. 1985); Potts v. Zant, 638 F.2d 727, 750–51 (5th Cir. 1981) (citing United States v. Sanderson,
595 F.2d 1021 (5th Cir. 1979)).  Consequently, a defendant "bears a heavy burden to show his
statements [under oath] were false."  United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988);
United States v. Green, 2008 WL 1923102 (11th Cir. 2008) (Table, text in WESTLAW); United States
v. Cardenas, 230 Fed. Appx. 933, 2007 WL 2119918 (11th Cir. 2007) (Table, text in WESTLAW).
"[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard

---

[6]  The undersigned cites Munguia-Ramirez only as persuasive authority and to show the
continued viability of Gonzalez-Mercado, and recognizes that the opinion is not considered binding
precedent.  *See* 11ᵗʰ Cir. R. 36-2.

to contend that he swore falsely." United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (quoting United States v. Barrett, 514 F.2d 1241, 1243 (5th Cir. 1975)).

Defendant's assertion that his plea was "coerced" is contradicted by both the plea colloquy and the district court's finding that his decision to plead guilty was made "voluntarily of [his] own free will without any threats or pressure from someone" (doc. 36 at 17).[7]  His assertion is further discredited by counsel's remarks at sentencing, where he requested leniency for his client and noted Defendant's desire to take responsibility for his actions and enter a guilty plea even before he appeared before the court (doc. 30 at 3).

Defendant's Motion for Leave to Supplement Claims Under Equitable Tolling

In his motion for leave to supplement, filed June 27, 2011,[8] Defendant seeks to raise two additional claims.  He asserts (1) that the Supreme Court's decision in Bond v. United States, 131 S. Ct. 2355 (2011) allows him to challenge the ACA as an invalid interference with the police powers of the State of Florida, and (2) that he was incompetent to enter a plea or stand trial (doc. 78).  The court must first consider whether Defendant should be permitted to supplement his pending motion with the additional grounds for relief, or whether the supplemental claims, filed over two years after the initial § 2255 motion was filed, are time barred.

In considering general principles of habeas law, an application for a writ of habeas corpus may be amended or supplemented as provided in the rules of procedure applicable to civil actions. 28 U.S.C. § 2242.  Similarly, Rule 12 of the Rules Governing § 2255 Proceedings provides for the Federal Rules of Civil Procedure to be applied, when appropriate, to motions challenging sentences.

---

[7] The district court reached this conclusion without having specifically asked Defendant whether he had been pressured or threatened in any way to change his plea.  Due to the nature of his "coercion" claim and the otherwise thorough colloquy, this omission is inconsequential to this court's resolution of the instant motion.

[8] A pro se inmate's pleading is deemed filed at the time it is placed in the prison mailbox or delivered to prison authorities for mailing.  See Houston v. Lack, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"); Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was signed).

Rule 15 of the Federal Rules of Civil Procedure governs amended and supplemental pleadings in civil cases.[9]  Rule 15(a) sets forth when a party may amend its pleadings, including 21 days after service or 21 days after service of a responsive pleading as a matter of course, and otherwise only with either the opposing party's consent or leave of court.  Fed. R. Civ. P. 15(a).

With regard to consideration of filing dates, Rule 15(c)(1) provides in pertinent part that:

An amendment to a pleading relates back to the date of the original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading;

Thus, as long as the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the filing date of the original pleading, even where the revised pleading contains legal theories not included in the original.  White v. White Rose Food, a Div. of DiGiorgio Corp., 128 F.3d 110, 116 (2d Cir. 1997); Hill v. United States Postal Service, 961 F. 2d 153, 154–55 (11th Cir. 1992).  The transaction or occurrence must, however, be based upon the same core facts originally alleged.  In general, relation back is permitted under Rule 15(c)(1) where an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading.  Bularz v. Prudential Ins. Co. of America, 93 F. 3d 372, 379 (7th Cir. 1996) (citations omitted); accord, Alpern v. UtiliCorp United, Inc., 84 F. 3d 1525, 1543 (8th Cir. 1996).  If, however, a party attempts to interject entirely different conduct or different transactions or occurrences into a case, then relation back is not allowed.

Claims made by a motion to vacate sentence are functionally no different than claims made in other civil litigation.  Rule 2(b) of the Rules Governing § 2255 Proceedings requires that a § 2255 motion specify all the grounds for relief available to the moving party and state the facts supporting each ground.  The summary of facts provides a basis to determine whether the new claim, which is proposed to be included in an amendment to the motion, arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original motion.  Fed. R. Civ. P. 15(c)(1).  If

---

[9]   Rule 15 applies to amendments in both § 2254 and § 2255 cases.  See, e.g., United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999); Rogers v. United States, 180 F.3d 349, 352 n.3 (1st Cir. 1999);  United States v. Duffus, 174 F.3d 333, 336 (3d Cir. 1999).

it does, and if the initial motion was timely, the amendment containing the new claim will also be timely because it relates back to the original motion.  In Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000), the court held that in order to relate back, claims in an amended or supplemental § 2255 motion must arise from the same set of facts as the original claims, not from separate conduct and occurrences in both time and type.  *See also* Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003); Dean v. United States, 278 F.3d 1218 (11th Cir. 2002); United States v. Espinoza-Saenz, 235 F.3d 501, 503– 05 (10th Cir. 2000); United States v. Pittman, 209 F.3d 314 (4th Cir. 2000); United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999); United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999).  Claims of ineffective assistance of counsel which arose from separate conduct and occurrences in both time and type do not relate back.  Davenport, 217 F.3d at 1346 (11th Cir. 2000); Farris; Dean; Duffus, *supra*.  In Craycraft, a defendant filed a timely § 2255 motion alleging ineffective assistance of counsel for failure to pursue a downward departure and for failure to object to the type of drugs at issue. 167 F.3d at 456–57.  In his proposed amendment, the defendant sought to add a claim that his counsel failed to file an appeal as instructed. The Eighth Circuit found that the proposed amendment did not relate back and therefore was time barred.  *Id.* at 457.  In Duffus, a defendant asserted several ineffective assistance of counsel claims in his original motion, and the amended claim alleged his counsel failed to move to suppress evidence. 174 F.3d at 335.  The Third Circuit found that the amended claim was completely new, and thus "could not be deemed timely under the 'relation back' provisions of  Fed. R. Civ. P. 15(c)."  *Id.* at 337.

Defendant's claim that he was incompetent to stand trial and that counsel was ineffective for his failure to raise the issue of competency or request a psychiatric examination (doc. 78 at 1) is unrelated to any of the claims previously raised.  Moreover, he offers no support for his assertion that equitable tolling should apply.  Thus, these claims do not relate back to the filing of his initial motion, and are time barred.  *See* Davenport, 217 F.3d at 1346; Farris, 333 F.3d at 1215; Dean; *supra*.

Defendant also claims he is entitled to relief under the Supreme Court's recent decision in Bond v. United States, 564 U.S. ___, 131 S. Ct. 2355 (June 16, 2011), which held that individuals, as well as the states, have standing to challenge a federal statute on Tenth Amendment grounds when they are directly affected by the statute.  *Id.* at 2363–64.  He appears to assert that this claim is timely because he seeks to add it within one year from the date of the Supreme Court's decision.  He also asserts that the Assimilated Crimes Act, 18 U.S.C. § 13, as applied in this case, interferes with the

State of Florida's reserved police powers under the Tenth Amendment to enforce Florida laws pertaining to DUI and driving with a suspended drivers license. The basis for his assertion is that he was driving on State Road 85, which crosses Elgin Air Force Base Reservation, but was not "specifically on the Air Force Base." He claims that State Road 85 was patrolled and policed by State Police and County Sheriffs, and that the Air Force's exercise of concurrent jurisdiction was improper, because "only the state of Florida legislature had enacted statutes prohibiting driving under the influence and driving with a suspended license on State Road 85" (doc. 78 at 4).

    Even if <u>Bond</u> is applicable to Defendant's case, his assertion that the federal government's prosecution of him was improper is misguided. Defendant was charged with DUI within the special maritime and territorial jurisdiction of the United States in violation of section 316.193, Florida Statutes and 18 U.S.C. §§ 7 and 13 (doc.1). Title 18 U.S.C. § 7 defines the special maritime and territorial jurisdiction of the United States, and includes lands under the "exclusive or concurrent jurisdiction" of the United States 18 U.S.C. § 7(3). Pursuant to his guilty plea, Defendant admitted that the roadway in which he was operating his vehicle at the time of the offense conduct was within the concurrent jurisdiction of the United States (docs. 15 at 2, doc. 36 at 12). Title 18 U.S.C. § 13(a) of the ACA, provides as follows:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). Thus, when the "precise act" prohibited by a state statute is neither defined or prohibited by a federal statute, a defendant who committed unlawful acts on an area under federal jurisdiction may be charged under state law via the application of the ACA. *See, e.g,* United States v. Sasnett, 925 F.2d 392 (11th Cir. 1992) (defendant charged via application of the ACA with involuntary manslaughter, DUI manslaughter, driving with a suspended or revoked driver's license and leaving the scene of an accident); United States v. Pate, 321 F.3d 1373 (11th Cir. 2003) (defendant charged via application of the ACA with driving under the influence of alcohol). State law is not assimilated for purposes of 18 U.S.C. § 13 if it conflicts with federal law. United States v. Sharpnack, 355 U.S. 286, 292–93 (1958); United States v. Gaskell, 134 F.3d 1039, 1043 (11th Cir.

1998); <u>United States v. Burke</u>, 113 F.3d 211, 211 (11th Cir. 1997).  In Defendant's case, the fact that there are no federal laws expressly prohibiting driving under the influence of alcohol did not preclude the Government from prosecuting him for this offense.  Nor does the ACA interfere with the state's police power.  Thus, he is not entitled to relief.

### Certificate of Appealability

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

Defendant's Motion for Leave to Supplement Claims under Equitable Tolling (doc. 78) is **DENIED** as to his claim that he was incompetent to stand trial as this claim is untimely, and **GRANTED** only to the extent the court has considered his challenge to the application of the Assimilated Crimes Act.

And, based on the foregoing, it is respectfully **RECOMMENDED**:

1.      That the motion to vacate, set aside, or correct sentence (doc. 44), as supplemented, be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 17<u>th</u> day of May, 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).